**FILED**
**Mar 08, 2021**
**10:54 AM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT KNOXVILLE

| | | |
|---|---|---|
| **MANDI CARR,** | ) | **Docket No. 2017-03-1526** |
| **Employee,** | ) | |
| **v.** | ) | |
| **VACASA TENNESSEE, LLC,** | ) | **State File No. 49648-2017** |
| **Employer,** | ) | |
| **And** | ) | |
| **AMGUARD     INSURANCE** | ) | **Judge Lisa A. Lowe** |
| **COMPANY,** | | |
| **Carrier.** | ) | |

## COMPENSATION HEARING ORDER DENYING BENEFITS

---

The Court held a Compensation Hearing on February 24, 2021. Ms. Carr sustained a pre-existing back injury in 2016 and an alleged work-related back injury on July 4, 2017. The issues are whether: (1) Ms. Carr's aggravation of her prior back condition arose out of and in the course and scope of her employment; (2) her aggravation was permanent; and (3) she is entitled to permanent disability benefits.

For the reasons below, the Court holds that Ms. Carr showed by a preponderance of the evidence that she sustained an aggravation injury primarily arising out of and in the course and scope of her employment. However, the Court holds that the aggravation was not permanent because she returned to her baseline condition. Therefore, she is not entitled to permanent disability benefits.

### History of Claim

Vacasa Tennessee, LLC is a real estate and rental company. Ms. Carr worked for Vacasa as a part-time housekeeper, cleaning vacation cabins in Sevierville.

Ms. Carr testified that on July 4, 2017, she was cleaning a cabin and injured her low back picking up a bag of dirty linens. Vacasa accepted the claim and provided medical treatment from orthopedic specialist Dr. Bruce Fry.

1

Dr. Fry had treated Ms. Carr for back complaints in 2016, and her 2016 MRI revealed a disc protrusion at L4-5. After the work injury, Dr. Fry requested an updated MRI for comparison, which revealed "a very large central and right paracentral disc herniation at L4-5." Dr. Fry administered epidural injections before referring Ms. Carr to a spine surgeon for consideration of surgery.

When Ms. Carr saw spine surgeon Dr. Patrick Bolt, she reported that she had no prior history of low-back injury. Therefore, Dr. Bolt was not aware of her 2016 MRI. He did not review the actual 2017 MRI scan but did review the radiologist's report detailing the L4-5 disc herniation. He found that Ms. Carr's herniated disc is more than 50% related to her work injury but decided she did not need surgery. However, Dr. Bolt ordered a new MRI to rule out any changes and an EMG. The June 2018 MRI showed that Ms. Carr's L4-5 herniation had improved, and the EMG showed no abnormalities. A repeat 2019 MRI was similar to the one in 2018, and a repeat EMG was again normal.

Dr. Bolt placed Ms. Carr at maximum medical improvement on November 19, 2019, and assigned permanent impairment of 9%, and work restrictions of limited lifting of ten pounds frequently, twenty pounds occasionally, and alternating sitting/standing. After being made aware of Ms. Carr's prior back complaints and reviewing past medical records, Dr. Bolt testified that Ms. Carr's post-work injury symptoms were comparable to her 2016 symptoms, and he conceded that Ms. Carr would've likely had an impairment rating of 5% due to her pre-existing back condition.

Vacasa hired Dr. Thomas Koenig to perform a record review. He was the only board- certified physician to review the actual MRI scans. Dr. Koenig acknowledged a change in Ms. Carr's 2017 MRI, but he stated that "radiographically it appears that the altered/worsened pathology in 2017 returned to its baseline level of protrusion by June 2, 2018." He noted that several attempts were made to confirm Ms. Carr's subjective radicular symptoms, but all EMG results were normal. Dr. Koenig found that the work injury merely resulted in a temporary exacerbation of Ms. Carr's pre-existing back condition with a return to baseline. He noted no permanent change attributable to the work injury. Finally, Dr. Koenig stated that he would assign the same restrictions to Ms. Carr both before and after the work injury.

Ms. Carr underwent a vocational assessment with Michael Galloway. Ms. Carr reported that her daughter drove for part of the trip to the evaluation, and that she experienced increased back and hip pain riding in the car to his office. He testified that considering Ms. Carr's age, education, work history, lack of transferrable skills in the labor market and Dr. Bolt's restrictions, she is 100% vocationally disabled.

At the Compensation Hearing, Ms. Carr asserted that she is permanently and totally disabled. She testified that she has not worked since her injury and is unable to do so. She stated that she has good days and bad. On good days, she tries to do chores around her

home and move around. On bad days, she lies in bed. Defense counsel asked Ms. Carr about frequent trips to Chattanooga, and she replied that she went there to avoid her husband, who was occasionally abusive toward her.[1] She said she would pull over at gas stations or rest areas to stand up and stretch to make the trips bearable.

Vacasa countered that Ms. Carr is not permanently and totally disabled because there was no anatomic change in her condition. It agreed the work injury resulted in a temporary anatomic change, but her condition returned to the baseline reflected in the 2016 MRI. Vacasa further argued that the Court should discredit Ms. Carr's testimony and the information she reported to Dr. Bolt and Mr. Galloway due to lack of credibility. Vacasa stated that they based their restrictions and vocational opinion on inaccurate information from Ms. Carr, so she is not permanently and totally disabled.

### Findings of Fact and Conclusions of Law

At a Compensation Hearing, Ms. Carr must prove by a preponderance of the evidence that she is entitled to the requested benefits. *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2020).

Based on the uncontroverted proof, the Court finds Ms. Carr sustained an aggravation of her pre-existing back condition arising primarily out of and in the course and scope of her employment on July 4. 2017. *See* Tenn. Code Ann. § 50-6-102(14)(A). Therefore, the Court turns to her entitlement to permanent disability benefits.

To recover permanent disability benefits for the aggravation of a pre-existing condition, the aggravation must be permanent and not the normal or expected progress of the condition. *See Milligan v. Ten-State, Inc.*, No. 02S1-9612-CV-00110, 1998 Tenn. LEXIS 69, at *5 (Tenn. Workers' Comp. Panel Feb. 20, 1998).

The Court faces conflicting medical opinions from Dr. Bolt and Dr. Koenig. A trial judge "has the discretion to conclude that the opinion of one expert should be accepted over that of another expert." *Reagan v. Tennplasco*, No. M2005-02020-WC-R3-CV, 2006 Tenn. LEXIS 1209, at *10 (Tenn. Workers' Comp. Panel Dec. 27, 2006). As stated by the Tennessee Supreme Court, "[w]hen faced . . . with conflicting medical testimony . . . it is within the discretion of the trial judge to conclude that the opinion of certain experts should be accepted over that of other experts and that it contains the more probable explanation." *Thomas v. Aetna Life and Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991) (internal quotation marks omitted).

---

[1] Ms. Carr's bank records document her hotel stays in Chattanooga. The Court will address some of those visits and how they coincided with her medical treatment in more detail below.

Dr. Bolt was not aware of Ms. Carr's pre-existing back condition because she reported to him that she had no prior history of back complaints, which was not true. He assigned permanent restrictions based on Ms. Carr's presentation of symptoms, and Mr. Galloway assessed her 100% vocationally disabled because of those restrictions and Ms. Carr's presentation of her condition. However, the Court finds Ms. Carr's frequent trips to Chattanooga, although not a direct violation of her restrictions, show that she was not completely forthright with her physicians or Mr. Gallaway about her condition.

Dr. Fry's records reveal many trips. Ms. Carr traveled to Chattanooga on August 7, 2017, and told Dr. Fry on August 14 that driving is an aggravating factor for her symptoms. She returned to Chattanooga on September 26 and told Dr. Fry on September 29 that her symptoms occur constantly with intermittent worsening. Ms. Carr had an epidural injection on October 26 and traveled to Chattanooga on October 28. On November 9, Ms. Carr told Dr. Fry that she was having trouble sleeping, couldn't find a comfortable position, and was quite miserable with pain, but she went to Chattanooga just three days later. Likewise, on January 29, 2018, Ms. Carr underwent a steroid injection and traveled to Chattanooga the next day. Then on February 12, Ms. Carr reported more numbness and tingling in her left foot and said she felt unsteady due to increased pain−yet she was in Chattanooga on February 3-4, and traveled there again on February 17.

Dr. Bolt's records show a similar pattern. On May 15, Ms. Carr told Dr. Bolt that her pain had worsened over the prior six months; yet she made 14 trips to Chattanooga during that time and went again four days after this appointment. On October 3, Ms. Carr told Dr. Bolt that her back and leg pain interfered with everything and reported worsening radiculopathy−yet she took four trips to Chattanooga the month before. On November 14, Ms. Carr reported persistent back, right buttock, and right groin pain but took three trips to Chattanooga the month prior. Ms. Carr went to Chattanooga five days before her January 25, 2018 MRI. On February 26, Ms. Carr went to get the results of her MRI, and she had been to Chattanooga three times in the prior three weeks. On August 22, Ms. Carr received a right-hip injection and went to Chattanooga three days later.

On August 29, Ms. Carr told her hip doctor that she had pain shooting down her right leg to her toe and had been in Chattanooga four days earlier. Ms. Carr went to Chattanooga the day before her October 2 MRI.

On October 23, Ms. Carr told Dr. Bolt she had low-back pain and right-foot numbness; yet she had been in Chattanooga the day before that, and on October 8 and 15. Ms. Carr was in Chattanooga the day before her October 30 EMG. On November 19, even though her EMG did not reveal any nerve damage, Ms. Carr reported ongoing pain in her back and leg and went to Chattanooga the next day.

Finally, Dr. Galloway evaluated Ms. Carr on February 25, 2020, and Ms. Carr reported that her daughter had to help her drive from Sevierville to Knoxville and that the

4

ride increased her back and hip pain. However, her bank records reflect charges at a Chattanooga gas station on February 23, a Super 8 motel in Chattanooga on February 24, and a Hilton Hotel in Chattanooga on February 25.

Any one of these instances alone or even a few would not be concerning. However, comparing the frequency of these Chattanooga trips with Ms. Carr's report of her symptoms and condition raises credibility issues. As does the fact that Ms. Carr told Dr. Bolt she had no prior history of back problems, because that was not true. Simply put, the Court did not find Ms. Carr credible.

In comparing the medical opinions, Dr. Bolt was not aware of Ms. Carr's prior back condition while treating her, but Dr. Koenig reviewed her pre- and post-work injury records. Dr. Koenig also independently reviewed all the MRI scans, while Dr. Bolt relied on the radiology reports. Dr. Koenig acknowledged the 2017 worsening at Ms. Carr's L4-5 level but noted that she returned to her 2016 baseline condition by 2018 with no permanent anatomic change. After learning about Ms. Carr's prior back problems, Dr. Bolt acknowledged that her symptoms after the work injury were comparable to those from her 2016 condition. Dr. Bolt testified that he relied on the history provided by Ms. Carr in forming his opinions. However, the EMG tests found no nerve damage to support her subjective radicular complaints. For these reasons, the Court credits Dr. Koenig's testimony over Dr. Bolt's.

The Court holds Ms. Carr's work injury caused a temporary aggravation of her pre-existing condition, but since she returned to her baseline condition, the aggravation was not permanent. Thus, the Court denies her claim for permanent disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Vacasa has provided the medical care to which Ms. Carr was entitled based on the aggravation of her pre-existing back condition. However, since the Court found that her symptoms have returned to her 2016 baseline, Vacasa is not required to provide any additional medical care.

2. Ms. Carr is not entitled to permanent disability benefits.

3. Vacasa Tennessee, LLC shall pay the $150.00 filing fee under Tennessee Compilation Rules and Regulations 0800-02-21-.06 (August 2019) directly to the Court Clerk within five business days of the date of this order, for which execution might issue if necessary.

4. Vacasa Tennessee, LLC shall file a Statistical Data Form (SD-2) within ten business days of entry of this order.

5. Unless appealed, this Order shall become final thirty calendar days after entry.

**ENTERED March 8, 2021.**


_____Lisa A. Lowe_____
**JUDGE LISA A. LOWE**
**Court of Workers' Compensation Claims**

**APPENDIX**

Technical record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request or Scheduling Hearing
4. Scheduling Order
5. Notice of Filing Form C-32 of Dr. Thomas Koenig
6. Post ADR Dispute Certification Notice
7. Notice of Filing of the Deposition of Mandi Carr, September 4, 2020
8. Notice of Filing of the Deposition of Mandi Carr, December 1, 2020
9. Employee's Motion to Exclude Employer's Unidentified Witnesses
10. Employer's Exhibit List for Compensation Hearing
11. Employer's Witness List for Compensation Hearing
12. Motion to Allow for Video Testimony at Upcoming Compensation Hearing
13. Employer/Carrier's Prehearing Brief
14. Employer's Filing of Evidence for Compensation Hearing
15. Employee's Prehearing Statement, Witness List, and Exhibit List
16. Notice of Filing of the Proof Deposition of Michael Galloway
17. Notice of Filing of the Proof Deposition of Dr. Patrick Bolt
18. Response to Motion to Exclude Employer's Unidentified Witnesses
19. Order Denying Moton to Exclude
20. Employee's Response to Employer's Motion to Allow Video Testimony at Upcoming Compensation Hearing
21. Order Allowing Potential Rebuttal Witness to Testify by Zoom
22. Notice of Late Identified Witness and Exhibit
23. Notice of Filing of Rule 72 Declaration of Patricia Sandal

Exhibits:

1. Deposition Transcript of Mandi Carr, September 4, 2020
2. Deposition Transcript of Mandi Carr, December 1, 2020

3. Deposition Transcript of Alyssa Breon
4. Deposition Transcript of Michael Galloway
5. Deposition Transcript of Dr. Patrick Bolt
6. Deposition Transcript Excerpt of Dr. Thomas Koenig, Amendolia v. Emory Valley Center Summit Consulting (marked for identification purposes only)
7. Vacasa, LLC's Employment File
8. Verizon Cellular Records
9. ORNL Banking Records
10. Sevier County Divorce File of Mandi Carr
11. State Certification Letter of Dr. Thomas Koenig (marked for identification purposes only)
12. State Certification Letter of Dr. Patrick Bolt (marked for identification purposes only)
13. Standard Form Medical Report for Industrial Injuries, Form C-32, of Dr. Thomas Koenig
14. Table of Contents of Medical Records
15. Requests for Admissions (marked for identification purposes only)

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on March 8, 2021.

| Name | Certified Mail | Email | Service sent to: |
| --- | --- | --- | --- |
| Timothy A. Roberto, Employee's Attorney | | X | troberto@brownandroberto.com |
| Allen Callison, Employer's Attorney | | X | Allen.callison@mgclaw.com |

_____Penny Shrum_____
**PENNY SHRUM, COURT CLERK**
**wc.courtclerk@tn.gov**

7



<u>Compensation Hearing Order Right to Appeal</u>:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

### Parties

**Appellant(s) (Requesting Party):** _____  ☐ Employer ☐ Employee

Address: _____  Phone: _____

Email: _____

Attorney's Name: _____  BPR#: _____

Attorney's Email: _____  Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s) (Opposing Party):** _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____

*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____  2. Address: _____

3. Telephone Number: _____  4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

9. My expenses are:

Rent/House Payment $ _____ per month     Medical/Dental  $ _____ per month

Groceries        $ _____ per month     Telephone      $ _____ per month

Electricity      $ _____ per month     School Supplies $ _____ per month

Water            $ _____ per month     Clothing       $ _____ per month

Gas              $ _____ per month     Child Care     $ _____ per month

Transportation   $ _____ per month     Child Support  $ _____ per month

Car              $_____ per month

Other            $ _____ per month (describe: _____ )

10. Assets:

Automobile            $ _____     (FMV) _____

Checking/Savings Acct. $ _____

House                 $ _____     (FMV) _____

Other                 $ _____     Describe: _____

11. My debts are:

Amount Owed                    To Whom

_____            _____

_____            _____

_____            _____

_____            _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires: _____

LB-1108 (REV 11/15)                                    RDA 11082